UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
THIRD DIVISION

---

| | |
|---|---|
| Hartford Fire Insurance Company, a Connecticut corporation, | Civil Action No. 10-CV-2818-SRN/FLN |
| Plaintiff, | |
| v. | |
| Pearson Mechanical Services, Inc., a Minnesota corporation, R.A. Pearson & Associates, LLC, a Minnesota limited liability company, Ronald Arvid Pearson, Troy Alan Pearson, Kathy L. Blue a/k/a Kathy Pearson, Craig Ronald Pearson, Amy Marie Pearson, Brian Richard Pearson, Melissa Lee Pearson, and Eric Jason Pearson, | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT** |
| Defendants. | |

---

This action came before the Court on August 25, 2011, based upon the motion of Plaintiff Hartford Fire Insurance Company ("Hartford") for partial summary judgment on Count I (Exoneration) and Count II (Indemnification) of Hartford's Complaint against the above-named Defendants.

Hartford appeared by and through its legal counsel, David D. Hammargren, and the Defendants appeared through their legal counsel, Kristin L. Kingsbury.

Based on the papers submitted, counsel's arguments, and all the files, records, and proceedings herein, the Court issues the following Findings of Fact, Conclusions of Law, and Order for Judgment.

## FINDINGS OF FACT

1. The Defendants each requested that Hartford issue payment bonds on behalf of Defendant Pearson Mechanical Services, Inc. ("Pearson").

2. Hartford did, in fact, issue the following payment bonds ("Bonds") for the following projects ("Bonded Projects"):

    a. Westwood Intermediate & Middle School, Bond No. 41 BCS ER1670, Bond Amount $2,166,000.00;

    b. Spring Lake Park H.S. – Phase II, Mech. & Temp. Controls, Bond No. 41 BCS ER1675, Bond Amount $6,536,300.00;

    c. Park HS Ventilation & Buldg. Imp., Bond No. 41 BCS ER1652, Bond Amount $8,208,960.00;

    d. Heat Piping for Chanhassen HS, Bond No. 41 BCS DV8188, Bond Amount $2,991,000.00; and

    e. 2008 Sunrise Park Middle School Boiler Replacement, Bond No. 41 BCS ER1668, Bond Amount $323,000.00.

3. To induce Hartford to issue the Bonds on Pearson's behalf, the Defendants each executed and delivered an indemnity agreement ("Indemnity Agreement").

4. On or about October 2, 2009, Hartford filed the Indemnity Agreement and a UCC-1 financing statement with the Minnesota Secretary of State as Document Filing No. 200917589355.

5. This filing perfected the security interest granted to Hartford in the Indemnity Agreement by each of the Defendants in certain of their respective assets.

6. The Indemnity Agreement provides, in relevant part, as follows:

> <u>Indemnity and Exoneration</u>.  The Indemnitors are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses including, but not limited to, court costs, interest, attorney's fees, professional fees and consulting fees, which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond.  Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of actions.
>
> <u>Collateral Security</u>.  On Hartford's demand, the Indemnitors shall deposit with Hartford an amount Hartford deems necessary to protect itself from all losses or expenses as soon as Hartford determines that liability exists or has a reasonable basis to believe that it may incur liability, whether or not Hartford has made any payment or created any reserve. . . .   The Indemnitors acknowledge and agree that the Indemnitors' failure to deposit with Hartford, immediately upon demand, the sum demanded by Hartford as collateral security shall cause irreparable harm to Hartford for which Hartford has no adequate remedy at law.  Therefore, the Indemnitors agree that Hartford shall be entitled to injunctive relief for specific performance of said obligation of the Indemnitors and hereby waive any claims or defenses to the contrary.
>
> <u>Claim Settlement</u>.  Hartford has the right to adjust, settle, or compromise any claim, demand, suit or judgment upon any Bonds without affecting the Indemnitors' liability under this Agreement.  The Indemnitors shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford . . . .  [R]ecords of any nature maintained by Hartford in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford. . . .

7. Hartford received payment bond claims ("Claims") from a number of Pearson's subcontractors for work performed on the Projects.

8. Pursuant to the Indemnity Agreement, Hartford mailed a letter dated February 2, 2010, demanding that the Defendants, and each of them, immediately deposit collateral with Hartford in the total amount of $2 million, but clarifying that as of February 2, 2010, Hartford had sustained a loss of $1,922,857.11.

9. Despite Hartford's demand, none of the Defendants deposited any collateral with Hartford.

10. Hartford reviewed and evaluated the Claims for compliance with the conditions precedent to recovery under the applicable Bond and for substantive merit.

11. Pursuant to the Indemnity Agreement, "Hartford has the right to adjust, settle or comprise any claim . . . upon any Bonds" and the Defendants "shall immediately be liable to Hartford for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by Hartford . . . ."

12. Hartford denied a number of claims for being untimely made but allowed and paid many other claims that it determined were timely filed and meritorious.

13. To date, Hartford has paid the following principal amount to resolve the Claims: $3,754,545.95.

14. This amount is partially offset by contract funds recovered by Hartford in the amount of $953,015.20.

15. As such, the present principal debt owed by the Defendants, and each of them, is $2,801,530.75.

16. Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

17. In opposing summary judgment, a nonmoving party may not rest upon mere denials but must set forth specific facts demonstrating the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In this regard, a fact is only material if its resolution affects the case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court should grant summary judgment, therefore, if a reasonable factfinder, weighing the undisputed material facts, could only rule for the moving party. *Id.* at 250.

18. In diversity cases, a court applies the forum state's conflict-of-laws analysis to questions of substantive law. *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 595-96 (8th Cir. 2007).

19. In this regard, Minnesota courts first determine whether a conflict exists between the laws of the different states at issue. *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000).

20. The Defendants are each located in Minnesota; Hartford is located in Connecticut.

21. "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Id.* at 94.

22. When the law of the different states is the same, the federal court should apply the law of the forum state. *Davis by Davis v. Outboard Marine Corp.*, 415 N.W.2d 719, 723 (Minn. App. 1987).

23. Under Minnesota law, to establish a breach of an indemnity agreement, the indemnitee must establish: (1) the formation of the indemnity agreement; (2) the indemnitee's performance of all conditions precedent under the agreement; and (3) the indemnitor's breach of the agreement. *Swiss Reinsurance America Corp. v. SuperValu, Inc.,* 743 F.Supp.2d 1050, 1059 (D.Minn. 2010) (citing *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. App. 2008).

24. Because Connecticut follows the same rule, *Balboa Ins. Co. v. Zaleski*, 532 A.2d 973, 977 (Conn. App. 1987), Minnesota law governs this issue.

25. When the language of an indemnity agreement is clear and non-ambiguous and the moving party establishes a breach thereof, the moving party is entitled to summary judgment. *See Citizens State Bank of Big Lake v. Transamerica Ins. Co.,* 815 F.Supp. 309, 313-14 (D.Minn. 1993) (applying Minnesota law, granting summary judgment for surety on indemnity agreement, finding its provisions unambiguous); *Am. Druggists' Ins. Co. v. Shoppe,* 448 N.W.2d 103,

105 (Minn. App. 1989) (affirming summary judgment for surety, stating "public policy dictates the enforcement of this indemnity agreement to provide incentive in the form of security for surety companies that issue bonds"); *Liberty Mut'l Ins. Co. v. Northeast Concrete Prods., LLC,* 756 N.W.2d 93, 103 (Minn. App. 2008) (affirming summary judgment to surety on indemnity agreement).

26. Applying the conflicts-of-law analysis, because Minnesota calculates contractual damages for breach of contract as the amount that would place the non-breaching party in the position it would have occupied but-for the breach., *Logan v. Norwest Bank Minn., N.A.,* 603 N.W.2d 659, 663 (Minn. App. 1999), and Connecticut follows the same rule, *West Haven Sound Dev. Corp. v. West Haven*, 514 A.2d 734, 742 (Conn. 1986) ("The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed"), Minnesota law governs an award of contractual damages.

27. Pursuant to Minnesota's conflict-of-laws analysis, prejudgment interest is a procedural issue and, therefore, Minnesota courts apply the forum's law. *See Schwan's Sales*, 476 F.3d at 595-96; *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 715 F.Supp.2d 871, 877 (D.Minn. 2010). In this regard, the applicable statute states that "[e]xcept as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on

pecuniary damages shall be computed . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first. . . ." Minn. Stat. § 549.09.

28. Courts have held, moreover, that a court should use Section 549.09 to calculate prejudgment interest on all judgments unless those that are derived from "loans or other obligations governed by specific interest rate-rate laws." *Best Buy Stores,* 715 F.Supp.2d at 878 (quoting *Richard Knutson, Inc. v. Lumber One, Avon, Inc.*, 2004 WL 2093582, at * 5 (Minn. App. Sept. 21, 2004) (unpublished)).

29. Pursuant to Section 549.09, the interest rate is "ten percent per year until paid" on judgments in excess of $50,000.00. Minn. Stat. § 549.09, subd. 1(c)(2).

30. Pursuant to Local Rule 54.3, a party requesting attorney's fees and costs, may serve an itemized motion for attorney's fees and verified bill of costs within 30 days of entry of judgment.

31. At the August 25, 2011 hearing on this matter, Plaintiff's counsel stated on the record that Plaintiff would agree to a judgment in the amount of (1) $2,801,530.75, the principal owed to date, plus (2) pre-judgment interest calculated under the statutory rate of 10% on $1,922,857.11, the amount of Plaintiff's loss as of its February 2, 2010 notice to Defendants, as provided under Minn. Stat. § 549.09, in lieu of a complicated calculation of pre-judgment interest on the amount owed to date, as provided under the contract.

## CONCLUSIONS OF LAW

1. There is no genuine issue of material fact that would preclude partial summary judgment in Hartford's favor because the undisputed material facts demonstrate that the Defendants, and each of them, have breached the Indemnity Agreement, which is a contract.

2. Specifically, the Defendants have failed to honor the exoneration and indemnification clauses of the Indemnity Agreement.

3. Hartford is entitled to a monetary award for contractual damages, 10-percent interest from the date that it mailed its notice of claim on February 2, 2010, attorney's fees and costs.

## ORDER FOR JUDGMENT

1. It is hereby ordered that Hartford's motion is GRANTED and it is ordered that Plaintiff Hartford Fire Insurance Company recover from the Defendants Pearson Mechanical Services, Inc.; R.A. Pearson & Associates, LLC; Ronald Arvid Pearson; Troy Alan Pearson; Kathy L. Blue a/k/a Kathy Pearson; Craig Ronald Pearson; Amy Marie Pearson; Brian Richard Pearson; Melissa Lee Pearson; Eric Jason Pearson, and each of them, jointly and severally, the principal amount of $2,801,530.75, with prejudgment interest at the rate of 10% per annum, commencing on February 2, 2010, and running until the date this order is signed, on the amount owed as of February 2, 2010. Such interest totals $299,965.71.

2. Through the date of this order, therefore, Hartford is awarded a judgment in the total amount of $3,101,496.46.

3. Hartford is entitled to prove its entitlement to attorney's fees and costs, which will be added to this judgment if such entitlement is proven by Hartford's subsequent motion pursuant to Local Rule 54.3.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 25, 2011.

<u>s/ Susan Richard Nelson</u>
Susan Richard Nelson
United States District Judge
